**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Case No. 22-cr-54 (MJD/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Isaiah Charles Bracy, | |
| Defendant. | |

Isaiah Charles Bracy is charged with being a felon in possession of a firearm. Indictment, Dkt. No. 14. He moves to suppress the gun that was found on the ground in dense vegetation where a witness and a St. Paul Police officer saw him throw it as he ran down an alley being pursued by the officer. Dkt. No. 31. Bracy contends he was unlawfully seized under the Fourth Amendment and *Terry v. Ohio*, 392 U.S. 1 (1968), and the gun is the fruit of that unlawful seizure. The Government argues the gun was abandoned by Bracy and lawfully recovered by police and, alternatively, the gun was lawfully seized under the plain view doctrine. It further argues the officer had reasonable suspicion to conduct a brief investigatory stop, and there was an independent basis to arrest him for fleeing police under Minnesota law. For the reasons discussed below, the Court recommends denying the motion.

**FINDINGS OF FACT**

On September 19, 2020 St. Paul Police Officer Chenoa Fields and her partner Anthony Dean were on patrol in an unmarked SUV when they received reports of shots fired in the area of Edmund Avenue and Marion Street. Hrg. Tr. 8-10, 18. They were about five blocks away, with Officer Dean driving and Officer Fields in the passenger seat. Hrg.

Tr. 8, 10-11. The shooter was described as being on foot and wearing a red hat and black shirt shooting at a black Jaguar. Hrg. Tr. 18-19; Gov't Ex. 4 at 0:35-1:04. The reports indicated multiple 911 calls reporting shots fired in that area. Hrg. Tr. 9-10.

The officers saw nothing of note near the Edmund-Marion intersection and turned south onto Marion. Hrg. Tr. 11; Gov't Ex. 4 at 1:12-:20. As they approached the next intersection, Charles Avenue, Officer Fields saw Bracy and two unknown females standing on the northwest corner of Marion and Charles. Hrg. Tr. 11. Bracy was wearing a white shirt, white pants, and no hat. Hrg. Tr. 19.

Officer Fields knew Bracy. Hrg. Tr. 11. She had worked in the gang and gun unit for five years and had arrested Bracy before. Hrg. Tr. 7. She knew he had prior criminal convictions and had recently been released from prison for a conviction related to a shooting in St. Paul. Hrg. Tr. 11-12. She knew he was affiliated with the Burner Block gang that is known for robberies, aggravated assaults, and gun crimes. Hrg. Tr. 12-13.

When Officer Fields saw Bracy, she told Officer Dean to pull over so she could get out and talk to him. Hrg. Tr. 13; Gov't Ex. 4 at 1:24-:32. She testified that, given how quickly the officers had arrived at the shots-fired location, her purpose was to ascertain whether Bracy was involved as a suspect, victim, or witness. Hrg. Tr. 13. As she opened the door and was getting out of the SUV she called out "Hey, Isaiah. Come here." Hrg. Tr. 13; Gov't Ex. 4 at 1:32-:34. Bracy took off running on the sidewalk northbound on Marion. Hrg. Tr. 13. Officer Dean is heard on the bodycam video saying "He's running." Gov't Ex. 4 at 1:34. Officer Fields, now outside the SUV, yelled "Come here. Police. Stop." as she started running after him. Hrg. Tr. 14; Gov't Ex. 4 at 1:35-:37. A few seconds later she again yelled "Stop." Gov't Ex. 4 at 1:41-:43. Halfway down the block Bracy turned left (westbound) into an alley, with Officer Fields in pursuit. Hrg. Tr. 14-15.

Partway down the alley Officer Fields saw him reach into his waistband with his right hand and toss an object into an overgrown lot directly to the north. Hrg. Tr. 15. She believed the object was a gun. Hrg. Tr. 15. She knew he was not allowed to possess firearms. Hrg. Tr. 16. Bracy continued running down the alley, then Officer Fields saw him cut northbound and run through the yards toward Edmund. Hrg. Tr. 15. She continued her pursuit but lost sight of him in the yards and ended the chase. Hrg. Tr. 15. Bracy was later apprehended by Officer Dean. Hrg. Tr. 15-16.

Officer Fields walked back to the alley and headed toward the area into which she had seen Bracy throw the gun. Hrg. Tr. 16. Two females were in the alley; one called out to Officer Fields and both of them pointed toward the area where the gun was tossed. Gov't Ex. 4 at 3:16-:20. One female witness told her she saw the man throw a black gun into an area of densely overgrown vegetation next to the alley, and the witness led her there. Hrg. Tr. 16; Gov't Ex. 4 at 3:20-4:38, 11:43-:57. The witness's description of the man matched Bracy. Gov't Ex. 4 at 11:57-12:07. Officer Fields and another officer unsuccessfully searched for the gun. Gov't Ex. 4 at 7:43-11:18. A K-9 unit arrived, and the dog found the gun. Hrg. Tr. 17; Gov't Ex. 4 at 19:41-30:10. Officer Fields photographed and collected the gun. Hrg. Tr. 17; Gov't Ex. 4 at 30:11-37:29.

## CONCLUSIONS OF LAW

Bracy seeks to suppress the gun on the basis that Officer Fields lacked the reasonable suspicion necessary to conduct an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). Specifically, he argues that (1) her calling out "Hey, Isaiah. Come here." was a stop, *i.e.,* a seizure under the Fourth Amendment, and (2) doing so was unlawful because Bracy did not match the description of the shooter in the incident to which she was responding, as he was wearing a white shirt and pants while the shooter

3

was reported to be wearing a red hat and black shirt. Thus, he contends, the gun must be suppressed as the fruit of her initial unlawful seizure. Def. Mem. 3, 7, Dkt. No. 44.

Bracy urges the Court to adopt the reasoning and result of the state district court in Ramsey County where Bracy was originally charged with unlawful possession of the gun. Def. Mem. 3-5, Dkt. No. 44. That court suppressed the gun and dismissed the case against him on the basis that Officer Fields' initial call to Bracy was an "illegal stop" under the Fourth Amendment because she had "no particularized, objective reason to believe" he was involved in the shots-fired incident. Dist. Ct. Order at 8-9, Dkt. No. 45-1. *See*, *State v. Bracy*, No. 62-CR-20-6023, (Ramsey Cty. Dist. Ct. July 16, 2021), *reversed and remanded,* No. A21-0943 (Minn. Ct. App. Dec. 20, 2021) (nonprecedential opinion). He concedes the Minnesota Court of Appeals reversed the district court's decision, concluding there was no initial seizure when Officer Fields called "Hey, Isaiah. Come here." App. Ct. Order at 5, Dkt. No. 45-2. However, he argues the result would have been different if the appellate court had the benefit of Officer Fields' later testimony (in federal court) that she considered her call to "come here" to be an "order" rather than a "greeting." Def. Mem. 5, Dkt. No. 44; Hrg. Tr. 22. Bracy overstates the impact of Officer Fields' testimony about her "order," as the Minnesota Court of Appeals already knew Officer Fields' subjective intent in calling out was to get Bracy to stop (based on her testimony at the state evidentiary hearing) and found that intent irrelevant to its legal analysis. The court stated, "It does not matter that the officer intended to stop and detain Bracy, because while she was calling his name, there was still no seizure or other intrusion because the mere act of calling his name and telling him to 'come here' did not constitute a seizure." App. Ct. Order at 5, Dkt. No. 45-2.

The Court first notes the obvious point that the state court decisions were made in a separate state criminal prosecution, and this Court is not bound by, nor does it review, such decisions. The Court only addresses them here because Bracy devotes almost his entire memorandum to quoting and discussing their analyses. *See* Dkt. No. 44. For its part, the Government does not argue that this Court should follow the state appellate court's analysis. Rather, it opposes Bracy's motion on the grounds that (1) Bracy abandoned the gun and thus lacks standing to challenge its seizure; (2) even if he had standing, the seizure of the gun was lawful under the plain view doctrine; and (3) even if the plain view doctrine did not apply, the police were justified in conducting a brief investigatory stop of Bracy and had an independent basis to arrest him for fleeing police under Minnesota law. Def. Mem. 4, Dkt. No. 48. Bracy's August 10, 2022 post-hearing memorandum does not address the Government's arguments regarding abandonment of the gun and the plain view doctrine.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. As a general rule, police may only seize a person pursuant to warrant or on probable cause. However, officers may conduct a brief investigatory stop when they have reasonable, articulable suspicion that a person is committing or is about to commit a crime. *Terry,* 392 U.S. at 20-21. Officers have such reasonable suspicion when, based upon the totality of the circumstances, they can identify specific, articulable facts that justify the stop. *United States v. Trogdon*, 789 F.3d 907, 910 (8th Cir. 2015).

A stop or "seizure" of a person can take the form of physical force or a show of authority that in some way restrains the liberty of the person. *Torres v. Madrid,* 141 S.Ct. 989, 995 (2021) (citing *Terry,* 392 U.S. at 19 n.16). The Supreme Court has specifically addressed seizures in the context of persons fleeing from police. It has held that, where

5

no physical force or contact has been applied, even if police have made a show of authority a fleeing person is not seized until he yields or until police physically stop him. *California v. Hodari D.*, 499 U.S. 621, 625-26, 628-29 (1991) (defendant who fled upon seeing police, who then gave chase, was not seized until he was tackled by officer). It stated:

> The word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ("She seized the purse-snatcher, but he broke out of her grasp.") It does not remotely apply, however, to the prospect of a policeman yelling "Stop, in the name of the law!" at a fleeing form that continues to flee. That is no seizure.

*Id.* at 626.

Here, Bracy's motion to suppress fails as a threshold matter because at the time he tossed the gun he had not been "seized" within the meaning of the Fourth Amendment. It is undisputed there was no physical contact or force applied to Bracy. Officer Fields had just arrived at the intersection, and no interactions had taken place before she called to him as she got out of the SUV. He immediately took off running. Even after she gave chase and yelled "Come here. Police. Stop." he did not stop or yield to her authority. His liberty was not restrained in any way, and Officer Fields in fact lost sight of him and ended her chase. Bracy was not "seized" at the time he discarded the gun, and consequently the gun was not the fruit of a seizure. *See id.* at 629 (cocaine that defendant tossed away while running from police was "not the fruit of a seizure").

Because the Court finds there was no seizure of Bracy at the time he tossed the gun, it need not analyze the Government's argument that Officer Fields had reasonable suspicion to make "a brief investigatory stop." Gov't Mem. 6-9, Dkt. No. 48. Not every police encounter implicates the Fourth Amendment and, moreover, the cases cited by the

6

Government are inapposite. For example, *Illinois v. Lidster*, 540 U.S. 419 (2004), involves a highway checkpoint at which motorists were stopped without any individualized suspicion in order to seek their voluntary cooperation in investigating a recent fatal hit-and-run; *Adams v. Williams*, 407 U.S. 143 (1972), involves a *Terry* stop and frisk based on a tip to police from a reliable informant that a person sitting alone in a car at 2 a.m. in a high-crime area was carrying narcotics and a concealed weapon; *United States v. Sharpe,* 470 U.S. 675 (1985), involves a *Terry* stop of two vehicles for suspected drug trafficking activities in which the issue was whether the duration of the stop was too long to be justified as an investigative stop, *i.e.,* transformed it from a *Terry* stop into a *de facto* arrest which must be supported by probable cause. The facts and legal analysis in those cases is not instructive here.

The Government's argument that, "[w]hen Bracy fled, Officer Fields was justified in arresting Bracy for the offense of fleeing a police officer" is likewise inapposite. Gov't Mem. 9-10, Dkt. No. 48. Bracy's gun was not discovered in conjunction with his arrest and was not the fruit of a search incident to his arrest. Rather, it was discovered because he was seen throwing it to the ground during the chase, before he was even "seized" and before his eventual arrest. *Cf. United States v. Sledge,* 460 F.3d 963, 967-68 (8th Cir. 2006) (probable cause existed to arrest defendant, who resisted patdown and attempted to run away, under Nebraska statutes for obstructing a peace officer and resisting arrest; cocaine discovered in the search incident to arrest was admissible evidence).

In addition, the Court finds Officer Fields' recovery of the gun did not implicate the Fourth Amendment because Bracy abandoned it when he threw it into densely overgrown vegetation as he ran from Officer Fields. To claim the protection of the Fourth Amendment's prohibition on unreasonable seizures, a defendant must demonstrate that

7

he has a reasonable expectation of privacy in the object that was seized. *See United States v. Crumble,* 878 F.3d 656, 659 (8th Cir. 2018). A defendant has no expectation of privacy in abandoned property. *Id.* Whether an object has been abandoned depends on whether the defendant, in leaving the object, relinquished his reasonable expectation of privacy in it, taking into account the totality of the circumstances. *Id.* Two important factors in this determination are denial of ownership and physical relinquishment of the property. *Id.* Courts consider only the objective facts available to the investigating officers at the time they recovered the evidence, not the property owner's subjective intent. *Id.; United States v. Simpson,* 439 F.3d 490, 494 (8th Cir. 2006).

Bracy physically relinquished the gun when he tossed it into the densely overgrown area off the alley. This act was seen by Officer Fields and the female witness in the alley. The gun was found a short time later by a police canine called to the scene to pinpoint its exact location in the dense vegetation. The Court finds that Bracy's discarding of the gun during the chase was an "attempt[] to disclaim ownership over this evidence so authorities could not trace the object[] back to him." *See Simpson,* 439 F. 3d at 494. As such, Bracy relinquished any reasonable expectation of privacy with respect to the gun and therefore abandoned it. *See id.* (defendant abandoned rifle and magazines that he threw to the ground during lawful police chase); *United States v. Segars,* 31 F.3d 655, 658 (8th Cir. 1994) (defendant abandoned package of cocaine that he dropped after being confronted by police and attempting to flee). Accordingly, having no reasonable expectation of privacy in the gun, Bracy lacks standing under the Fourth Amendment to challenge its seizure. *See Simpson,* 439 F.3d at 494 (person who relinquishes privacy expectation over his property has abandoned it, and "abandoned property may be recovered by police and used for evidentiary purposes"); *United States v. Liu,* 180 F.3d 957, 960 (8th Cir. 1999)

(when a person abandons property, his "expectation of privacy in the property is so eroded that he no longer has standing" for a Fourth Amendment challenge).

Furthermore, even if Bracy had standing, the seizure of the gun was lawful under the plain view doctrine. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States,* 390 U.S. 234, 236 (1968). Here, as discussed above, Officer Fields' call to Bracy followed by her pursuit of him was not a seizure of his person within the meaning of the Fourth Amendment. She was lawfully present in the alley as she chased him and saw him toss the gun. After ending her chase she backtracked to the area where she had seen him throw it. While doing so, a witness in the alley pointed her to the same area and told her she saw the man throw a black gun there. Officer Fields recovered the gun with the assistance of the K-9 unit and photographed and collected it as evidence. Given that the gun had been tossed onto a vacant lot where it could be found by anyone, including children, Officer Fields was within her authority to enter the property and retrieve the gun. *See, e.g.*, *United States v. Smith*, 820 F.3d 356, 360 (8th Cir. 2016) (describing officer's duty to protect the public under the community caretaking function). Certainly there is nothing in the record to indicate Bracy had an ownership interest in the property or any expectation of privacy thereon. The warrantless seizure of the gun was lawful.

Therefore, the Court recommends the motion to suppress the gun be denied. Because there was no "seizure" of Bracy within the meaning of the Fourth Amendment, the gun was not the fruit of an unlawful seizure. In addition, Bracy abandoned the gun and thus lacks standing to challenge its seizure by police, which was lawful under the plain view doctrine in any event.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT Defendant Isaiah Charles Bracy's Motion for Suppression of Evidence [Dkt. No. 31] be DENIED.

Dated: September 30, 2022                     s/David T. Schultz
                                              DAVID T. SCHULTZ
                                              U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).