UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

                    Plaintiff,

            vs.                                    MEMORANDUM
                                                   AND ORDER
                                        Crim. No. 22-54 (MJD/DTS)

Isaiah Charles Bracy,

                    Defendant.

_____

Thomas Calhoun-Lopez, Assistant United States Attorney, Counsel for Plaintiff.

Matthew Deates, Office of the Federal Defender, Counsel for Defendant Isaiah Charles Bracy.

_____

        This matter is before the Court on the Report and Recommendation by

United States Magistrate Judge David T. Schulz dated September 30, 2022.  (Doc.

51.)  Judge Schulz recommends the Court deny Defendant's Motion to Suppress

Evidence.  (Doc. 31.)  Defendant filed objections to the Report and

Recommendation.  (Doc. 58.)  The Government filed a response to Defendant's

objections.  (Doc. 59.)

        Pursuant to statute, the Court has conducted a de novo review of the

record.  28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b).  Based upon that review, and

1

in consideration of the applicable law, the Court will adopt the Report and Recommendation.

For a full recitation of the facts, the Court refers to the Report and Recommendation. (Doc. 51 at 1-3.) Briefly, Defendant's motion to suppress is premised on law enforcement's seizure of a gun that Defendant threw into an empty lot as he was fleeing from the police. On September 19, 2020, St. Paul Police Officer Chenoa Fields and her partner Anthony Dean were on patrol in an unmarked SUV when they received reports of multiple 911 calls reporting shots fired near the area of Edmund Avenue and Marion Street. The shooter was described as running and wearing a red hat and black shirt. The officers were only about five blocks away and responded to the scene about 20 seconds after receiving the initial report where they saw nothing of interest. They turned south and drove onto Marion Street. As they approached the intersection with Charles Avenue, Officer Fields saw Defendant with two unknown females on the corner of Marion and Charles. Defendant was wearing a white shirt and white pants.

Officer Fields was familiar with Defendant from her five years of work with the gang and gun unit. She had previously arrested Defendant; knew he

had prior criminal convictions, was affiliated with the Burner Block gang that is known for robberies, aggravated assaults, and gun crimes; and that he had recently been released from prison.  Given how quickly officers arrived on scene, Officer Fields told Officer Dean to pull over so she could talk to Defendant to ascertain whether he was involved in the shooting in any way as a suspect, victim, or witness.  Officer Fields opened her door and called, "Hey, Isaiah, come here!"  Officer Fields intended this statement as an order for Defendant to stop and speak to her.  (Doc. 43 (Fields Hr'g Test.) at 22.)

Defendant immediately took off running with Officer Fields calling after him, "Come here.  Police.  Stop," as she ran after Defendant.  A few seconds later, Officer Fields again called, "Stop," but Defendant kept running.  He turned left down an alley and Officer Fields saw Defendant reach into his waistband with his right hand and toss an object she believed was a gun into an overgrown lot as he continued to run through yards toward Edmund Avenue.  Officer Fields eventually lost sight of Defendant and ended the chase.  Defendant was later apprehended by Officer Dean.   Had Defendant not run away, Officer Fields would have "just stood there and talked to him." (Id. at 24.)

After giving up her pursuit of Defendant, Officer Fields walked back to the area where she saw Defendant throw the object, which she thought was a gun. Two females were in the alley; one called out to Officer Fields and both of them pointed toward the area where the gun was tossed.  One female witness told her she saw the man throw a black gun into the empty lot, which was next to the alley and was covered with densely overgrown vegetation.  The witness led Officer Fields to the lot.  The witness's description of the man who threw the gun matched Defendant.  Officer Fields and another officer searched unsuccessfully for the gun.  However, a police K-9 unit arrived and a dog found the gun, which was photographed, collected, and turned into the police property room.

Defendant filed a motion to suppress "all evidence derived following the unconstitutional stop of defendant."  (Docs. 31; 44 at 7.)  Defendant argues that he was illegally seized when Officer Fields ordered him to "Come here" and "Stop" because the only evidence Officer Fields had tying him to a crime was his presence in a high-crime area coupled with his criminal history that, he argues, does not constitute reasonable suspicion for a Terry stop.  (Doc. 44 at 6.) Defendant urges the Court to adopt the reasoning of the Ramsey County District Court, which granted Defendant's motion to suppress based on the same facts

presented above.   That court determined that the only reason Officer Fields

wanted to speak to Defendant and not to other bystanders was her familiarity

with his criminal history.  (Doc. 45-1 (Def. Ex. A—<u>Minnesota v. Bracy</u>, Crim. File

No. 62-CR-20-6023 (Order and Mem. on Def. Mot. to Suppress) at 9, 11).)

That order, however, was reversed by the Minnesota Court of Appeals,

which found that no seizure occurred in the case.  <u>State v. Bracy</u>, No. A21-0943,

2021 WL 6010119, at *3 (Minn. Ct. App. Dec. 20, 2021), <u>review denied</u> (Mar. 15,

2022).  The court held that by calling out Defendant's name, Officer Fields was

merely acknowledging her familiarity with Defendant, not expressing a show of

authority or other intimidating conduct that would have led a reasonable person

to feel unable to leave despite Officer Fields' intention to stop and detain

Defendant.  <u>Id.</u>   The court reasoned that while Officer Fields was calling

Defendant's name, "there was still no seizure or other intrusion because the mere

act of calling his name and telling him to 'come here' did not constitute a seizure.

Once Bracy took off running, however, there was reasonable suspicion to stop

and detain him."  <u>Id.</u>

The Magistrate Judge has recommended the motion to suppress be denied

because at the time Defendant tossed his gun, he had not been seized within the

meaning of the Fourth Amendment because there was no physical contact or force applied to him.  (Doc. 61 at 5-6 (citing <u>California v. Hodari D.</u>, 499 U.S. 621, 626) ("The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement. . . .  It does not remotely apply, however to the prospect of a policeman yelling "Stop in the name of the law!" at a fleeing form that continues to flee.  That is no seizure.").)  Because Defendant was not seized, the gun was not the fruit of any seizure.  (<u>Id.</u> at 6.)  The Magistrate Judge also found that Officer Fields' recovery of the gun did not implicate the Fourth Amendment because Defendant abandoned the gun when he threw it away as he ran from Officer Fields and, therefore, he had no expectation of privacy in the gun and thus no standing to challenge its seizure.  (<u>Id.</u> at 7-9.)  The Magistrate Judge further found that even if Defendant had standing, the seizure of the gun was lawful under the plain view doctrine.  (<u>Id.</u> at 9.)

　　　　Defendant argues that under the circumstances of this case, "a reasonable person would have believed that he was not free to leave."  (Doc. 58 at 5 (citing <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980); <u>Florida v. Royer</u>, 460 U.S. 491, 502 (1983).)  Defendant concedes that <u>Hodari D.</u>, which declared that merely

yelling at someone to stop does not constitute a seizure, was decided after his

cited cases.  (Id. at 6 n.4.)  However, he maintains that Officer Fields' statement,

"Hey, Isaiah.  Come here," rendered him unable to leave and therefore

constituted a seizure.  (Id.)

The Court does not agree.  Although not binding on this Court, the

Minnesota Court of Appeals' reasoning on this point is sound:

> It is relevant that the officer and Bracy knew each other, and she
> merely said, "Hey Isaiah, come here," acknowledging their
> familiarity with each other. The record does not reflect that there
> was any other "show of authority" or other intimidating conduct
> that would have led a reasonable person to feel unable to leave.
> Instead, the officer's actions were more akin to cases where an
> officer walks up to a person in a public place. It does not matter that
> the officer intended to stop and detain Bracy, because while she was
> calling his name, there was still no seizure or other intrusion because
> the mere act of calling his name and telling him to "come here" did
> not constitute a seizure.

Bracy, 2021 WL 6010119, at *2; (Doc. 61 at 4 (dispatching Defendant's argument

that Minnesota Court of Appeals would have decided differently if it had Officer

Fields' testimony stating that she considered "Come here" to be an order because

the court held that Officer Fields' intention made no difference when the mere

act of calling Defendant's name was not a seizure)).

Thus, the Court agrees with the Magistrate Judge.  The Court finds no

error in the Magistrate Judge's application of the law to the facts of this case.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.      The Report and Recommendation dated September 30, 2022 **(Doc. 51)** is **ADOPTED**; and

2.      Defendant's Motion to Suppress Evidence **(Doc. 31)** is **DENIED**.


DATED:   January 5, 2023

s/Michael J. Davis<br>
Michael J. Davis<br>
United States District Court